Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH VAPORE,

              **Plaintiff,**

              **v.**

ATLANTIC COUNTY JUSTICE
FACILITY, ACJF, *also known as*
ATLANTIC COUNTY JAIL, *et al.*,

              **Defendants.**

Civil Action No.: 25-3744 (ES) (JBC)

OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is the motion to dismiss plaintiff Joseph Vapore's ("Plaintiff") complaint (D.E. No. 1-1 ("Complaint" or "Compl.")) under Federal Rule of Civil Procedure 12(b)(6) filed by defendants Atlantic County Department of Public Safety, Atlantic County Division of Adult Detention, Atlantic County Justice Facility, and County of Atlantic ("the Moving Defendants"). (D.E. No. 4 ("Motion to Dismiss")). Plaintiff filed a brief in opposition, and the Moving Defendants submitted a reply brief in further support of their Motion to Dismiss. (D.E. No. 8 ("Opp'n Br."); D.E. No. 11 ("Reply Br.")). Having carefully considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 28(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.      **BACKGROUND**[1]

According to his Complaint, Plaintiff was a pretrial detainee incarcerated at the Atlantic

---

[1]     On a motion to dismiss, the Court accepts as true all well-pled facts in the Amended Complaint. *See Doe v.*

County Jail. (Compl. ¶ 3). In his Complaint, he names the following defendants: Atlantic County Justice Facility ("the ACJF"), also known as the Atlantic County Jail, an adult detention facility housing approximately 650 inmates; Atlantic County Division of Adult Detention ("the ACDAD"), the managing authority for the Atlantic County Jail; the Atlantic County Department of Public Safety ("the Department"), an agency, department, and unit of the County of Atlantic; County of Atlantic ("the County"), a duly constituted political subdivision of the State of New Jersey, with supervisory authority, management, and control of the county jail facility operated by, through, or under the auspices of the ACJF and/or the ACDAD.; and "ABC Agency, John Does 1 through 10, John Doe Doughty and Jane Does 1 through 10 (collectively 'the John Doe Defendants')."[2] (*Id.* ¶¶ 4–8). Plaintiff alleges that the John Doe Defendants "are fictitious names for the governmental entities, departments, facilities, agencies, bureaus, divisions or units that owned, operated, controlled and managed the Atlantic County Jail at all applicable times [and] who hired, retained, trained, managed, supervised and employed the correctional officers and jail personnel assigned to and working in the Atlantic County Jail." (*Id.* ¶ 8). "Said fictitious parties also include the individual corrections officers, jailers, police officers or other personnel who caused injury to the Plaintiff as described below, and/or whose conduct, misconduct, act[s,] or omissions led to the Plaintiff's injuries." (*Id.*). Furthermore, the Moving Defendants "delegated to one or more of the John Doe Defendants the power and authority to supervise, control, and manage the Plaintiff during the period of his incarceration at the Atlantic County Jail facility." (*Id.* ¶ 10; *see also* ¶ 9 (further alleging that John Doe Defendants were acting within their course and scope of employment and under color of state law and are sued individually and in their official

---

*Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

[2]    The Court refers to the John Doe Defendants and the Moving Defendants collectively as "Defendants."

2

capacities)).

On April 18, 2023, Plaintiff was incarcerated at the ACJF under the custody, supervision and control of Defendants. (*Id.* ¶ 16). While standing in the jail admissions area, Plaintiff was permitted by officers to use his cell phone. (*Id.* ¶ 17). However, "without notice and without provocation, a jail officer – believed to be named 'Doughty' or a substantially similar name [and a John Doe Defendant] – violently snatched the phone from Plaintiff, grabbed Plaintiff's left arm, and traumatically yanked it backwards." (*Id.* ¶ 18). The officer then grabbed Plaintiff under the armpit with his right arm and swept his leg under Plaintiff's legs from behind, tripping Plaintiff, and forcing him to fall to the floor. (*Id.* ¶ 19). As a result of his fall, Plaintiff's right arm snapped, causing major trauma to his elbow. (*Id.* ¶ 20). While Plaintiff was laying on his stomach incapacitated from his injury, the John Doe Defendants jumped on him, "knee[d]" him, smashed his head into the floor, and put his legs into restraints. (*Id.* ¶ 21). Plaintiff was not evasive, combative, threatening, or otherwise aggressive in a manner that would have jeopardized the safety of officers or the security of the facility. (*Id.* ¶ 22).

Plaintiff alleges that the attack caused a serious fracture to his right arm, and, despite that injury, Defendants negligently handcuffed this arm behind his back, exacerbating the injury and magnifying the pain and suffering. (*Id.* ¶¶ 23–24). Defendants also attempted to ignore Plaintiff's injury but eventually transported him to the hospital. (*Id.* ¶ 25). "As a direct and proximate result of the acts, actions and misconduct of the Defendants, and of the specific actions of the John Doe[ ] Defendants, and as a result of the negligent hiring, retention, training, and supervision of the [Moving Defendants]," Plaintiff suffered "permanent injuries to his right arm, wrist, and hand, including a shattered elbow that required surgical intervention and implantation of multiple prosthetic plates and related hardware." (*Id.* ¶ 26). "As a further proximate cause of Defendants'

3

conduct, Plaintiff was hospitalized for an extended period, underwent reconstructive procedures for a complex fracture of the elbow, including the internal fixation of multiple plates, a ball and connecting hardware; he suffered from carpal tunnel syndrome, head trauma and other debilitating physical and psychological injuries; he was forced to undergo a course of physical therapy; and he endured enormous pain and suffering"  (*Id.* ¶ 28 ("Plaintiff is now left with life-changing and transformative permanent injuries to his right arm."); *see also* ¶ 27 (alleging that Plaintiff is right-handed)).

On or about April 16, 2025, Plaintiff, through counsel, filed the Complaint in the Superior Court of New Jersey, Law Division, Atlantic County (ATL-L-000741-25).  (D.E. No. 1 ¶ 1).  In that pleading, he alleges the following sixteen claims: (i) Count One – Assault; (ii) Count Two – Battery; (iii) Count Three – Harassment; (iv) Count Four – False Imprisonment; (v) Count Five – Negligence by the Defendants; (vi) Count Six – Vicarious Liability; (vii) Count Seven – Intentional Infliction of Emotional Distress; (viii) Count Eight – Negligent Infliction of Emotional Distress; (ix) Count Nine – Negligent Supervision, Training and Discipline; (x) Count Ten – Violation of the Eighth Amendment Physical Abuse under 42 U.S.C. § 1983; (xi) Count Eleven – Violation of the Eight Amendment Excessive Force under § 1983; (xii) Count Twelve – Violation of the Eighth Amendment Failure to Protect under § 1983; (xiii) Count Thirteen – Violation of the Eighth Amendment Failure to Supervise under § 1983; (xiv) Count Fourteen – Violation of the Eighth Amendment Failure to Train under § 1983; (xv) Count Fifteen – Violation of the New Jersey Constitution, Article I, Paragraphs 1 and 12 and under N.J. Stat. Ann. § 10:6-2(c) – Physical Abuse; and (xvi) Count Sixteen – Violation of the New Jersey Constitution, Article I, Paragraphs 1 and 12 and under § 10:6-2(e) for Excessive Force.  (*Id.* ¶¶ 29–133).[3]   Except for Count Six

---

[3]     Plaintiff erroneously labeled two counts as "Count Five"— both his claim for "Negligence by the

(which only names the Moving Defendants), the claims are alleged against all Defendants. (*See id.*).

The Moving Defendants filed a Notice of Removal on May 2, 2025. (*See generally id.*). On June 4, 2025, the Moving Defendants filed their Motion to Dismiss (D.E. No. 4), Plaintiff filed his brief in opposition to the Motion to Dismiss on July 21, 2025 (D.E. No. 8), and the Moving Defendants replied on July 29, 2025 (D.E. No. 11).

## II. LEGAL STANDARD

A court properly grants a motion to dismiss under Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986)).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under Federal Rule of Civil Procedure 8, a complaint's claims must be supported by "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint must set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

---

Defendants" and his claim for "Vicarious Liability." (*id.* ¶¶ 58–69). For the sake of clarity, the Court will refer to Plaintiff's "Vicarious Liability" claim as "Count Six" and will adjust its references to all subsequent claims accordingly.

5

*Twombly*, 550 U.S. at 555 (citation omitted). A complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do[,]'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *Burlington Coat Factory Litig.*, 114 F.3d at 1426 (citation omitted). Rather, "[i]n deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted); *see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) ("Ordinarily, a court may not consider documents outside the pleadings when deciding a motion to dismiss"). However, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (citation omitted)).

A defendant moving to dismiss under Rule 12(b)(6) bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231–32 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.    DISCUSSION

### A.    Plaintiff's Federal Claims

In Counts Ten through Fourteen, Plaintiff alleges claims under 42 U.S.C. § 1983.  (Compl.

6

¶¶ 94–125).  The Moving Defendants argue that the claims against the County must be dismissed because Plaintiff's Complaint fails to include sufficient factual allegations plausibly indicating the existence of an unconstitutional policy, custom, or practice, or an unconstitutional failure on the part of the County to supervise or train its personnel.  (D.E. No. 4 ("Mov. Br.") at 2).  They further contend that the Court should dismiss the claims against the ACJF, the ACDAD, and the Department because, as governmental sub-units, they are not proper parties to this action.  (*Id.*).  The Court agrees with the Moving Defendants on both points.

### 1.   The Federal Claims Against the AJCF, the ACDAD, and the Department

Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws."  42 U.S.C. § 1983 (emphasis added).  Accordingly, to be liable under Section 1983, a defendant must be a "person" within the meaning of the statute.  *See id.*

Although a municipality or local government constitutes a "person" within the meaning of Section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 662–63 (1978), courts have held that local police departments, county jails, and other county agencies are not separate entities subject to suit under § 1983 because they are merely administrative arms of the municipality or local government, *see Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) (finding that the district court correctly determined that the Jersey City Police Department was not a proper party to a § 1983 action).

Here, the AJCF, the ACDAD, and the Department are not subject to suit under § 1983 because they are "merely administrative arms of [Atlantic County]."  *See id.*  Accordingly, the Court **DISMISSES** *with prejudice* Counts Ten through Fourteen against the AJCF, the ACDAD,

and the Department.

### 2.    The Federal Claims Against the County

In *Monell*, the United States Supreme Court recognized that, while municipalities or local governments, like the County, can be found liable under § 1983, "a municipality cannot be held liable under [the federal civil rights statute] on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  Thus, a local government cannot be held liable for "an injury inflicted solely by its employees or agents." *Id.* at 694.  However, a municipality may be liable if a plaintiff shows that the municipality's "choices were the 'moving force' behind the constitutional violation." *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025) (quoting *Monell*, 436 U.S. at 694).

There are two "ways" or "theories" to establish municipal liability:

> A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, [*Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)] (citing [*Monell*, 436 U.S. at 694]), or that they were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," *see id.* (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers. *Id.* at 798–99.

*Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

Under the first theory, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between execution of the policy and the injury suffered. *See Harley v. City of N.J. City*, No. 16-5135, 2017 WL 2779466, at *7–8 (D.N.J. June 27, 2017).  A policy is made when an official possessing final policymaking authority issues a proclamation, policy, or edict. *See Fong v. City of Newark*, No. 22-7243, 2024 WL 5074763, at *3 (D.N.J. Oct. 12, 2024).  "Custom 'can be proven by showing that a given course of conduct,

although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"Once a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 301 (D.N.J. 2018) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). If the policy or custom is not facially unconstitutional, "causation can be established only by 'demonstrat[ing] that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences[,]'" and "[a] showing of simple or even heightened negligence will not suffice." *Id.* (first quoting *Brown*, 520 U.S. at 407; and then quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)).

Under the second way of establishing municipal liability, a plaintiff may bring a claim for the municipality's failure to train, supervise, or discipline subordinates. *See Forrest*, 930 F.3d at 105; *Young v. Monmouth Cnty.*, No. 24-4975, 2025 WL 354447, at *3 (D.N.J. Jan. 31, 2025). To plead a "failure/inadequacy" claim, the plaintiff must allege facts showing "there was an obvious and clear need for the affirmative promulgation of a new policy to address deficiencies which, if left uncorrected, were so likely to cause a violation such as the one the plaintiff suffered that the defendant in question can be said to have been deliberately indifferent to the deficiency." *Id.* (first citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222–23 (3d Cir. 2015); and then citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).

Claims for failures in training, supervision, and discipline require a plaintiff to establish that a municipality's failure to train, supervise, or discipline "amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact." *Kelley v. Reyes*, No. 19-17911, 2025 WL 618207, at *21 (D.N.J. Feb. 26, 2025) (quoting *City of Canton, Ohio v. Harris*,

9

489 U.S. 378, 388 (1989)); *see also Young*, 2024 WL 354447, at *3. "This consists of establishing whether '[1] municipal policymakers know that employees will confront a particular situation, [2] the situation involves a difficult choice or a history of employees mishandling, and [3] the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Kelley*, 2025 WL 618207, at *21 (quoting *Forrest*, 930 F.3d at 106).

The plaintiff must allege facts showing that the failure to act reflects a deliberate or conscious choice. *See Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *3 (3d Cir. June 7, 2024) (per curiam); *Est. of Roman*, 914 F.3d at 798. "Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (alteration in original) (quoting *City of Canton*, 489 U.S. at 391); *see also Beers*, 2024 WL 2874283, at *3 (same). "Establishing a failure to train claim under Section 1983 is difficult and applies in narrow situations." *Cooper v. City of Paterson*, No. 23-3566, 2024 WL 1298917, at *5 (D.N.J. Mar. 27, 2024) (citations omitted); *see also Young*, 2025 WL 354447, at *3 (noting that a municipality's culpability is at its most tenuous where a claim rests on a failure to train and will only be tenable where the failure to train amounts to deliberate indifference to the rights of persons in contact with untrained personnel).

In any event, a pattern of similar constitutional violations is ordinarily required to demonstrate deliberate indifference for purposes of failure/inadequacy claims. *See Hightower*, 130 F.4th at 357; *Thomas*, 749 F.3d at 223; *Young*, 2025 WL 354447, at *3. However, "[a] mere pattern of a handful of vaguely similar constitutional violations is generally insufficient to meet this requirement." *Young*, 2022 WL 354447, at *3 (noting that, in *Connick*, the Supreme Court

held that "having four convictions overturned for *Brady* violations over ten years was insufficient to support a failure to train claim where those violations were dissimilar to the specific *Brady* violation" (citing *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011))).

"Nevertheless, the Supreme Court posited in *Canton* that in certain situations, the need for training 'can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights' even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (quoting *City of Canton*, 489 U.S. at 390 n.10); *see also Hightower*, 130 F.4th at 357 ("[T]he Supreme Court has 'hypothesized' that 'in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference.'" (quoting *Connick*, 563 U.S. at 63)).  Single-incident claims depend on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Thomas*, 749 F.3d at 223–24 (alteration in original) (quoting *Brown.* 520 U.S. at 409).  "[S]uch a claim is not viable in the absence of an extremely obvious deficiency." *Young*, 2025 WL 354447, at *3 (citing *Connick*, 563 U.S. at 63-64).

In his Complaint, Plaintiff appears to rely on both the policy-and-custom and the failure/inadequacy theories of municipal liability.  However, he fails to allege sufficient facts to state a plausible *Monell* claim against the County under either theory.

Specifically, Plaintiff does not identify either a facially unconstitutional policy or custom, or a policy or custom that, although facially constitutional, was adopted or maintained with deliberate indifference as to the policy's or custom's known or obvious consequences. *See Adams*, 294 F Supp. 3d at 301.  Instead, in support of his federal claims against the Moving Defendants, Plaintiff merely alleges that "[a]t all relevant times, one or more of the Defendants herein created

11

policies, practices and/or customs which caused the physical abuse and excessive force against Plaintiff, with deliberate indifference to the harm that Plaintiff suffered." (Compl. ¶ 117). An allegation that does nothing more than offer mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557); *see also Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (affirming dismissal of *Monell* claims because the complaint "failed to identify any unlawful policy or custom" and instead merely restated the elements of a cause of action under § 1983, which was insufficient to meet the rigorous standards of culpability and causation required to state a claim for municipal liability under *Monell*).

Likewise, Plaintiff does not allege facts plausibly indicating that the County violated his constitutional rights under the failure/inadequacy theory of liability. In his federal claims, Plaintiff baldly asserts that, "[a]s a direct and proximate result of Defendants' failure to supervise detailed above, Plaintiff sustained the damages alleged in this Complaint" and that Moving Defendants "failed to provide appropriate training which caused the physical abuse, excessive force, and/or retaliatory conduct against Plaintiff, with deliberate indifference to the harm that Plaintiff suffered." (Compl. ¶¶ 119, 123). Plaintiff has not alleged facts showing that the failure to act reflected a deliberate or conscious choice. *See Beers*, 2024 WL 2874283, at *3; *Est. of Roman*, 914 F.3d at 798. In particular, the Complaint does not refer to any other instances of "physical abuse, excessive force, and/or retaliatory conduct" that could raise a plausible inference of deliberate indifference with respect to deficiencies in training, supervision or discipline.[4] *See*

---

[4] Under Count Nine (Negligent Supervision, Training and Discipline), Plaintiff alleges that the Moving Defendants were under a duty to exercise reasonable care and to supervise, train, and discipline their correctional officers regarding the use of excessive force and "the management of ostensibly disobedient inmates;" failed to exercise reasonable care in supervising, managing, training, and disciplining corrections officers "despite actual and/or constructive knowledge that they had engaged in severe harassment and assault of Plaintiff;" and failed to take measures to address the conduct and behavior of the officers and permitted a "willful ignorance of substantial risk of

*Young*, 2025 WL 354447, at *3 ("'A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,' as it is policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees' which is indicative of deliberate indifference." (quoting *Connick*, 563 U.S. at 62)); *see also Wood*, 568 F. App'x at 104–05 (upholding dismissal of complaint that consisted of conclusory and general claims of failure to screen, train, or supervise and failed to allege facts showing prior notice through a pattern of similar constitutional violations).

According to Plaintiff, his Complaint pleads both "facts of a municipal policy or custom" and "facts of a municipal policymaker's conduct." (Opp'n Br. at 12–13). Plaintiff asserts that the County, as the municipal entity responsible for governing and managing municipal services such as a county jail, "is the one that established the rules and policies governing the jail centers, as well as the requirements for employment thereof." (*Id.* at 13). He indicates that ACDAD's website shows that the County has a "zero tolerance" policy for the use of excessive force against an inmate under the Prison Rape Elimination Act, which the officer violated by using excessive force against Plaintiff.[5] (*Id.* (citing D.E. No. 8-2)). Plaintiff further contends that, while the ACDAD provides for "zero tolerance" for excessive force, the municipality permits its officers to act in clear and deliberate indifference to their employer's rules and policies. (*Id.* at 14). Purportedly, "[i]t is

---

harm to permeate, which said situation was outrageous, grossly negligent, reckless, repugnant to good moral behavior, contrary to public policy, extreme, outrageous, and especially egregious, for which defendants should be punished in a manner that will serve as an example to other detention facilities." (Compl. ¶¶ 90–92). However, Plaintiff's assertions are factually unsupported. Specifically, he does not allege facts either indicating a pattern of similar incidents in which untrained, unsupervised, or undisciplined officers had harassed and assaulted inmates or suggesting in some other way that the failure to act reflected a deliberate or conscious choice. Indeed, he appears to suggest, without explanation, that the "severe harassment and assault" at issue in this case somehow put the Moving Defendants on retroactive notice of the need for additional or modified training. (*Id.* ¶ 91). In addition, as Plaintiff admits (Opp'n Br. at 14), a *Monell* claim for failure to train, supervise or discipline requires a showing of deliberate indifference (as opposed to negligence).

[5]   Plaintiff also cites (without any explanation) to the New Jersey Office of Attorney General's "Use of Force Core Principles." (Opp'n Br. at 13 (citing D.E. No. 8-4)).

commonly known, especially amongst the municipality," that officers would daily face situations testing their judgment (such as "fights, weapons, etc."); the municipality was aware that such situations would and could result in officers "deviating from their usual protocol and training," which "would in essence pertain to some violations of constitutional violations of constitutional rights, which is why the policy was designed to address such excessive force that could and may be used;" and, "[h]owever, in this specific case, the removal of a phone from the plaintiff was not a situation in which such constitutional rights should have been violated in such a manner." (*Id.* at 14–15). Finally, Plaintiff notes that the New Jersey Legislature enacted Bill A5751 to ensure that corrections officers were trained to treat inmates with dignity, fairness, and respect, which was "not established" when the officers physically grabbed Plaintiff, threw him to the ground, and kneed him to the floor. (*Id.* at 15 (citing D.E. No. 8-3)).

"It is well-settled that Plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion." *Ibrahim v. DeFillippo*, No. 19-5021, 2021 WL 753898, at *8 (D.N.J. Feb. 26, 2021) ("Indeed, 'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Pennsylvania ex rel. Zimmerman v. PepsiCo.*, 836 F.2d 173, 181 (3d Cir. 1988)). Similarly, to the extent Plaintiff cites to additional documents not referenced in the Complaint, "as a general rule, the court may not consider anything beyond the four corners of the complaint." *Id.* at 3.

In any event, Plaintiff's brief fails to identify either a facially unconstitutional policy or custom or a policy or custom that the County adopted or maintained with deliberate indifference to known or obvious consequences, or to allege facts raising a reasonable inference that the County violated Plaintiff's constitutional rights by failing to adopt or enforce rules or policies, train, supervise, or discipline the John Doe Defendants. In fact, Plaintiff indicates that the County has

14

established a "zero tolerance" policy against the use of excessive force as well as "usual protocol and training" regarding excessive force.  (Opp'n Br. at 13–15); *see also Hightower*, 130 F.4th at 356 (stating that a municipality is not liable just because its employees did not follow its policy). Additionally, to allege a plausible claim against the County under the failure/inadequacy theory, a litigant must ordinarily cite to a pattern of similar instances of unconstitutional conduct, and Plaintiff here has not done so.[6] *See Hightower*, 130 F.4th at 357; *Thomas*, 749 F.3d at 223; *Young*, 2025 WL 354447, at *3.

Accordingly, because Plaintiff fails to allege a plausible *Monell* claim, the Court **DISMISSES** *without prejudice* Counts Ten through Fourteen against the County.

### B.      The State Law Claims

#### 1.      The NJCRA Claims

In Counts Fifteen and Sixteen, Plaintiff alleges violations of the New Jersey Constitution and seeks relief under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2. (Compl. ¶¶ 126–33).  The NJCRA is New Jersey's analogue to a federal civil rights claim under § 1983, and a claim under the NJCRA is generally construed identically to an equivalent federal claim and is subject to the same defenses.  *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011).  Accordingly, for the same reasons stated in Section III.A.1., *supra,* the Court **DISMISSES** *with prejudice* Counts Fifteen and Sixteen against ACJF, ASDAD, and the Department.  For the reasons stated in Section III.A.2., *supra*, the Court **DISMISSES** *without prejudice* Counts Fifteen and Sixteen against the County.

---

[6]      Furthermore, Plaintiff does not contend that this case involves a situation that could be characterized as exhibiting deliberate indifference without a pattern of similar constitutional violations, and, even if he had, he fails to satisfy this narrow exception.  *See Hightower*, 130 F.4th at 357 (noting that the only hypothetical example of "single-incident" liability provided by the Supreme Court was a city arming its police with guns and failing to provide any legal training as to how to use them); *Young*, 2025 WL 354447, at *3 (stating that such a single-incident claim is not viable in the absence of an extremely obvious deficiency).

### 2.    Common Law Claims

As the Court noted in Section I, Plaintiff has asserted nine state common law claims in addition to his statutory causes of action. (Compl. ¶¶ 29–93). The Moving Defendants did not address the common law claims in their initial brief. (*See generally* Mov. Br.). Plaintiff nevertheless discussed those causes of action in his opposition. (*See generally* Opp. Br.). While the Moving Defendants briefly acknowledged certain of those claims in their Reply, they did so in cursory fashion, primarily to argue that such claims cannot serve as the basis for a Section 1983 claim. (Reply Br. at 3–5). To the extent the Moving Defendants *did* intend to attack the sufficiency of Plaintiff's common law claims, their efforts fail on two grounds. First, the Moving Defendants did not seek that relief in their opening submission, and "'it is well-established that new arguments cannot be raised for the first time in reply briefs.'" *Spence v. New Jersey*, No. 19-21490, 2021 WL 1345872, at *5 (D.N.J. Apr. 12, 2021) (quoting *Pitman v. Ottehberg*, No. 10-2538, 2015 WL 179392, at *9 (D.N.J. Jan. 14, 2015)). Even if the Court were to consider those arguments, the Moving Defendants have not demonstrated that Plaintiff failed to plead plausible claims vis-à-vis those causes of action. The Moving Defendants have thus failed to carry their burden on this motion. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (In the context of a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant bears the burden of showing that no claim has been presented."). For these reasons, the Motion to Dismiss is **DENIED** to the extent the Moving Defendants seek dismissal of Plaintiff's state common law claims.

16

## IV.   CONCLUSION

For the reasons stated above, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Counts Ten through Sixteen of the Complaint are **DISMISSED** *with prejudice* with regard to the ACJJF, the ACDAD, and the Department.  Counts Ten through Sixteen of the Complaint are **DISMISSED** *without prejudice* with regard to the County.  The Motion to Dismiss is **DENIED** in all other respects.  Plaintiff may submit an amended complaint within thirty (30) days if he can cure the deficiencies identified in this Opinion with regard to the claim(s) dismisse(ed) without prejudice.

An appropriate Order follows.

**Dated:  March 30, 2026**

s/ Esther Salas
**Esther Salas, U.S.D.J.**